Justice Thomas,
concurring.
I join the Court’s opinion. I write separately to note that, in my view, the Religion Clauses require civil courts to apply the ministerial exception and to defer to a religious organiza­tion’s good-faith understanding of who qualifies as its minis­ter. As the Court explains, the Religion Clauses guarantee *197 religious organizations autonomy in matters of internal gov­ernance, including the selection of those who will minister the faith. A religious organization’s right to choose its ministers would be hollow, however, if secular courts could second-guess the organization’s sincere determination that a given employee is a “minister” under the organization’s theological tenets. Our country’s religious landscape in­cludes organizations with different leadership structures and doctrines that influence their conceptions of ministerial sta­tus. The question whether an employee is a minister is it­self religious in nature, and the answer will vary widely. Judicial attempts to fashion a civil definition of “minister” through a bright-line test or multifactor analysis risk disad­vantaging those religious groups whose beliefs, practices, and membership are outside of the “mainstream” or unpal­atable to some. Moreover, uncertainty about whether its ministerial designation will be rejected, and a corresponding fear of liability, may cause a religious group to conform its beliefs and practices regarding “ministers” to the prevail­ing secular understanding. See Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos, 483 U. S. 327, 336 (1987) (“[I]t is a significant burden on a religious organization to require it, on pain of substan­tial liability, to predict which of its activities a secular court will consider religious. The line is hardly a bright one, and an organization might understandably be concerned that a judge would not understand its religious tenets and sense of mission. Fear of potential liability might affect the way an organization carried out what it understood to be its religious mission” (footnote omitted)). These are certainly dangers that the First Amendment was designed to guard against.
The Court thoroughly sets forth the facts that lead to its conclusion that Cheryl Perich was one of Hosanna-Tabor’s ministers, and I agree that these facts amply demonstrate Perich’s ministerial role. But the evidence demonstrates *198 that Hosanna-Tabor sincerely considered Perieh a minister. That would be sufficient for me to conclude that Perich’s suit is properly barred by the ministerial exception.